David H. BLATTNER, et al., Appellants,

v.

Gerald FORSTER, et al., Respondents,

Janet M. Van Keulen, Defendant.

No. 81–1088.

Supreme Court of Minnesota.

July 23, 1982.

Willenbring, Lickteig & Dahl and Timothy D. Clements, Cold Spring, for appellants.

Quinlivan & Williams, St. Cloud, for Forster, et al.

SCOTT, Justice.

Appellants David H. and Clara M. Blattner appeal from summary judgments and an award of attorneys' fees in favor of respondents Gerald and Florence Forster and Janet M. Van Keulen. The issues on appeal are whether there are genuine questions of fact for trial and whether the lawsuit was vexatiously brought justifying an award of attorneys' fees. We affirm.

On September 23, 1974, the Blattners and the Forsters, as vendors and vendees respectively, executed a contract for deed. Forsters agreed to pay a purchase price of $36,000: $5,000 cash and the balance, including 8% annual interest, in $220 monthly installments until October 21, 1979, when the entire unpaid balance would become due. The contract provided:

> If, on October 21, 1979, three lending institutions refuse to refinance this transaction at 8% interest (one institution being of the Vendors choice), then this contract shall be extended upon the same monthly payment and interest rate until financing becomes available.

On October 13, 1978, the Forsters and Van Keulen, as vendors and vendees respectively, executed a second contract for deed concerning the real property described in the Blattner-Forster contract. Van Keulen agreed to pay a purchase price of $73,000: $36,000 down and the balance, including 8% annual interest, in monthly installments of $280 until October 2, 1988, when the entire unpaid balance is due.

On October 24, 1979, Forsters delivered to Blattners copies of denials of loan applications submitted by them to Avon State Bank and Stearns County National Bank. On November 17, 1980, Blattners' attorney wrote to Forsters demanding the balloon payment within 10 days. His letter stated that sale of the property to Van Keulen constituted refinancing within the meaning of the original agreement and that no bank would grant a mortgage upon the interest remaining in Forsters. Forsters' attorney responded, refusing to pay and asserting that Forsters were within their contractual rights.

On January 20, 1981, Blattners commenced this suit against Forsters and Van Keulen, requesting a declaratory judgment that under the terms of the Blattner-Forster contract the entire balance was due and payable. The complaint alleges that it was the intent of the parties that the Forsters would remain on the premises until the entire purchase price was paid as well as that the second contract constituted a refinancing. Both Forsters and Van Keulen answered and subsequently moved for summary judgment. Blattners opposed the motion by an affidavit of Clara Blattner stating that the intent of the parties was that the balloon would become due under circumstances that had occurred. The trial court observed that the Blattners had drafted the original agreement and that they had driven a hard bargain in 1974 by demanding maximum interest allowable by statute. The court found the contract terms unambiguous that refinancing must be from a "lending institution" and ordered summary judgment in favor of the defendants. The trial court also awarded attorneys' fees pursuant to Minn.Stat. § 549.21 (1980) on the ground that the suit was not brought in good faith. Blattners appeal from both determinations.

**1.** Blattners contend that summary judgment was inappropriate because the contract for deed is ambiguous and, therefore, factual issues as to the parties' intent remain unresolved. Whether a contract is ambiguous is a legal determination in the first instance. If the language used is reasonably susceptible of more than one meaning, an ambiguity exists and courts may resort to extrinsic evidence of intent to construe the contract. *Republic National Life Insurance Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349 (Minn.1979).

We agree with the determination of the trial court that the meaning of the contract is clear on its face. The contract expressly states that payment of the balloon is required on October 21, 1979, unless three lending institutions refuse to refinance at 8% interest. The contract language contains no support for Blattners' contention that the contract reasonably can be read to require payment of the balloon on October 21, 1979, unless making the payment would necessitate borrowing funds from a lending institution at a rate of interest exceeding 8%. The only condition to extending the contract is obtaining the refusals to lend. The parties clearly intended to continue the contract in force if "lending institution" financing were not available.

Appellants do not dispute that the required number of lending institutions actually did refuse to refinance the transaction in question at 8% interest. Because the contract is unambiguous and no factual issue remains, the trial court correctly granted summary judgment in favor of respondents.

**2.** Blattners also argue that the trial court erred by awarding attorneys' fees to Forsters and Van Keulen. Minn.Stat. § 549.21 (1980) provides that "[u]pon motion of a party prevailing as to an issue, the court in its discretion may award to that party * * * reasonable attorney fees * * * relating to the issue if the party or attorney against whom * * * fees are charged acted in bad faith as to that issue." In *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81 (Minn.1979), we charac-

terized the statute as a codification of the common law rule that attorneys' fees are recoverable where the unsuccessful party has acted in bad faith, vexatiously, or for oppressive reasons. See, *id.* at 97 n.13; *see also Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 246 N.W.2d 700 (1976).

This is not a case where there was a good faith dispute over the terms of the contract. We agree with the trial court that the Forsters did no more than exercise the legal and contractual rights which clearly were theirs under the contract for deed. Because the contract is not ambiguous, it is difficult to conclude that Blattners acted other than vexatiously in bringing this lawsuit. The court did not abuse its discretion in granting reasonable attorneys' fees under Minn. Stat. § 549.21 (1980).

Respondents Forster are awarded $400 for attorney's fees on appeal. Respondent Van Keulen's minimal participation in the appeal does not justify an award of attorney's fees on appeal.

Affirmed.

YETKA, Justice (dissenting).

Under Minn.R.Civ.P. 56.03, summary judgment is appropriate if "there is no genuine issue as to any material fact." In passing on a motion for summary judgment, the court is not to resolve issues of fact, but only to determine if they exist. *Nord v. Herreid*, 305 N.W.2d 337 (Minn. 1981). If any doubt exists as to the presence of a genuine fact issue, that doubt must be resolved in favor of a finding that a fact issue exists. *Rathbun v. W. T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641 (1974).

This court has consistently recognized that if the terms of a contract are at issue or any of its provisions are ambiguous or uncertain, summary judgment is not appropriate. *Matter of Turners Crossroad Development Co.*, 277 N.W.2d 364 (Minn.1979). The purpose for this rule is "to guarantee that the parties to a contract have a full opportunity to present evidence that will clarify or explain the unclear term." *Id.* at 369. Ambiguity exists if a contract is *rea-*

*sonably* susceptible to more than one construction. *Republic National Life Insurance Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn.1979).

I am persuaded that the contract, as a whole, can reasonably be read to require payment of the balloon on October 21, 1979, *unless* the payment thereof would necessitate borrowing funds from a lending institution at a rate of interest exceeding 8%. Because the reading given force by the trial court—that the payment of the balloon on October 21, 1979, was required only if 8% financing from a lending institution could be obtained—is also reasonable, the agreement is ambiguous. Conflicting evidence of intent having been submitted to the trial court, the summary judgments must be reversed.

The Blattners originally sold the property in 1974 by contract for deed to the Forsters for a total price of $36,000, with $5,000 in cash as a down payment and the balance due in monthly installments of $220, including 8% interest on the unpaid balance. On October 21, 1979, the remaining balance was to come due if financing could be found. In October 1978, or approximately 1 year before the balloon payment was due, the Forsters entered into a new contract, this time as vendors, selling the land to Van Keulen for $73,000. Of this new purchase price, $36,000 was to be paid in cash and the balance of $37,000 to be paid in monthly installments of $280, including 8% interest on unpaid balances until October 2, 1988, when the entire balance is due.

Thus, the Forsters received a down payment equal to their entire original purchase price for the land. They continue to receive $280 a month from the Van Keulens while paying only $220 to the Blattners. Not only have they recouped their original purchase price, for which they made a $5,000 down payment, they also are retaining $36,-000 in cash while continuing to draw monthly installments. I find this unconscionable and would hold that the fact that the Forsters got a $36,000 down payment on their sale indicates an ability to refinance and pay the balance due the Blattners in

1979. If the Forsters were to pay off the Blattners in full, the Forsters would be left with more than their original cash payment and still have $30,000 to be collected in monthly installments. Moreover, by entering into this new contract for deed arrangement, the Forsters have severely restricted, to their advantage, the opportunities to secure timely institutional financing.

It appears that the three lending institution refusals provided for in the original contract were to serve as evidence of an inability to finance. This inability to finance was more than cured by the acquisition of private financing through a buyer willing to pay more than twice the original purchase price and able to make a down payment in the amount of the original sales price. I would reverse.